UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                 Civil No. 1:23-cv-269

vs.

$59,920 UNITED STATES CURRENCY,

    Defendant.
_____/

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

NOW COMES Plaintiff, United States of America, by and through its attorneys, Mark A. Totten, United States Attorney for the Western District of Michigan, and Daniel T. McGraw, Assistant United States Attorney, and states upon information and belief that:

### NATURE OF THE ACTION

1. This is a civil forfeiture action filed pursuant to 21 U.S.C. § 881(a)(6) and Supplemental Rule G(2) of the Federal Rules of Civil Procedure to forfeit and condemn to the use and benefit of the United States of America $59,920 United States currency (the "Defendant Currency").

### THE DEFENDANT IN REM

2. The Defendant Currency consists of $59,920 in United States currency that was seized on or about September 16, 2022 by the Drug Enforcement Administration (DEA) in Van Buren County, Michigan. The Defendant Currency is currently in the custody of the United States Marshals Service (USMS).

1

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1345 and 1355(b)(1)(A), because this action is being commenced by the United States of America as Plaintiff, and the acts giving rise to the basis for forfeiture occurred in this judicial district.

4.     Venue is proper before this Court pursuant to 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to forfeiture occurred in this judicial district, and/or pursuant to 28 U.S.C. § 1395(b), because the Defendant Currency was found within this judicial district.

## BASIS FOR FORFEITURE

5.     As set forth below, the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes (1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance; and/or (2) proceeds traceable to such an exchange; and/or (3) money, negotiable instruments, and securities used or intended to be used to facilitate a violation of the Controlled Substances Act, 21 U.S.C. §§ 841, 846; and pursuant to 18 U.S.C. § 981(a)(1)(A) because it constitutes any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960, or any property traceable to such property.

## FACTS SUPPORTING FORFEITURE

*Seizures of Bulk Cash from Fernando Carreno*

6. In September 2019, law enforcement in Lake Charles, Louisiana seized $259,980 in bulk U.S. currency from two hidden compartments in a 2017 Ford F-350 driven by Fernando Carreno.

7. On July 25, 2022, Fernando Carreno traveled from Houston, Texas to Grand Rapids, Michigan on United Airlines. Fernando Carreno rented a black Dodge Caravan and drove from the Grand Rapids airport to 1360 Paris Avenue, NE, Grand Rapids, Michigan 4905, the residence of Mario Ortiz and Mayra Carreno.

8. Early the next morning, on July 26, 2022, the Dodge Caravan was parked outside of the Baymont Inn on Phoenix Avenue in South Haven, Michigan.

9. On July 26, 2022, at approximately 9:28 a.m., Ferando Carreno left the Baymont Inn in the Dodge Caravan. During a subsequent traffic stop, Carreno told a Michigan State Police (MSP) Trooper that he was traveling from Texas to Grand Rapids to purchase a dog. Carreno gave consent for the Trooper to search the Dodge Caravan. Inside, the Trooper found approximately $65,950 in bulk U.S. currency in a duffel bag behind the driver's seat. The currency was in a vacuum sealed bag, stacked in multiple bundles, and wrapped with currency bands.

10. On August 11, 2022, the MSP Department of Forensic Science Division found three fingerprints of comparison value on the paper banding used to organize and bundle the bulk currency seized from Fernando Carreno. All three fingerprints were identified in Michigan's Automated Fingerprint Identification System (AFIS)

and belonged to Mario Ortiz.

*Seizure of the Defendant Currency During a Traffic Stop of Mayra Carreno and Ortiz*

11. On September 16, 2022 at approximately 9:45 a.m., Mario Ortiz, Mayra Carreno, and several minor children left the residence on Paris Avenue in a 2021 white Chevrolet Suburban.

12. On September 16, 2022 at approximately 3:50 p.m., the 2021 white Chevrolet Suburban was parked in a business parking lot in Milwaukee, Wisconsin.

13. On September 16, 2022 at approximately 9:48 p.m., an MSP Trooper performed a traffic stop on the 2021 white Chevrolet Suburban as it traveled back towards Grand Rapids on eastbound I-196 in Van Buren County. Mayra Carreno was driving, Mario Ortiz was the front seat passenger, and there were four minor children in the backseats.

14. Mayra Carreno told the Trooper that the Suburban belonged to her father who lived in Texas, provided the Texas title application, but was unable to provide the registration or insurance. Mario Ortiz apologized to the Trooper for having marijuana in plain view, as he brushed marijuana crumbs and rolling papers off his lap.

15. The MSP Trooper observed that both Mayra Carreno and Mario Ortiz were wearing Santa Muerte necklaces. Upon information and belief, Santa Muerte is a symbol commonly associated with drug traffickers and cartels.

16. Mayra Carreno told the MSP Trooper they were coming from Mario Ortiz's friends' house who lived somewhere in Michigan, but did not know specifically

where, and seemed unsure about where they had been. Carreno stated they left Grand Rapids around 9:00 a.m. and had been gone all day visiting friends.

17. The MSP Trooper learned that Mario Ortiz was on probation with the Kent County, Michigan state court for a weapons offense, and that the terms of Ortiz's probation included a search clause and a condition that prohibited Ortiz from leaving the state of Michigan without approval. Ortiz falsely told the Trooper that he was on probation for driving without a license, and that they were visiting friends in Michigan. Ortiz became confrontational when the Trooper asked about the names of these friends and where they lived.

18. The MSP Trooper asked Mayra Carreno for consent to search the Suburban and she declined. A K-9 officer responded and the K-9 gave a positive indication on the Suburban for the presence of narcotics.

19. During a search of the Suburban, officers found the Defendant Currency in the locked glovebox, rubber banded in various denominations. Mayra Carreno denied carrying large amounts of cash over $10,000. Mario Ortiz stated he was going to buy a car. When asked how much currency he had, Ortiz did not know. When asked for a rough estimate, Ortiz said it was around $10,000 and possibly a little more. Ortiz stated the money was locked in the glovebox but was unable to answer how to open the glovebox. Ortiz handed the Trooper a "Migos Car Dealing" business card and claimed that is how he made his money.

20. During a subsequent interview at the South Haven Police Department, both Mayra Carreno and Mario Ortiz refused to answer any questions regarding the

bulk cash or where it came from, but instead alluded to owning it and claimed their attorney would prove its legitimacy.

21. Upon information and belief, drug traffickers commonly use vehicles to convey or hide narcotics and the proceeds of narcotics transactions, including using hidden or locked compartments within those vehicles to evade detection by law enforcement. Large-scale drug traffickers commonly maintain large amounts of U.S. currency to maintain and finance their drug trafficking. Large-scale drug traffickers also often employ money couriers to move drug trafficking proceeds, often in the form of bulk cash, to engage in financial transactions, and facilitate their drug trafficking. Bulk cash is usually but not always transported in vacuum sealed packages, and commonly bundled in multiple denominations. Unexplained wealth is probative of crimes motivated by financial gain or greed, including drug trafficking.

*"Mino Sabo" Distributed Cocaine from Mayra Carreno and Ortiz's Residence*

22. On January 9, 2023, law enforcement seized approximately 1 kilogram of cocaine compressed into brick form that belonged to Gabriel Lorenz and was found inside an orange Nike shoebox in his girlfriend's apartment in Grand Rapids. Lorenz admitted to investigators that it was his cocaine.

23. During a search of Lorenz's iPhone, investigators found a text message thread in the Signal application between Lorenz's phone and a contact saved as "Mino Sabo" using the phone number (616) 410-5029 beginning on November 22, 2022 and ending on January 8, 2023 that was consistent with drug trafficking. Signal is a free end-to-end encryption messenger application.

24. Investigators located relevant drug trafficking messages from January 6, 2023, just three days prior to the cocaine seizure. In the messages, Lorenz and "Mino Sabo" discuss meeting at "Mino Sabo's" residence. Lorenz said he would "be there in five." In response, "Mino Sabo" said, "I have a big scale. U trying to buy one I'll pay u here." Upon information and belief, this text messaging is consistent with drug trafficking.

25. During the same timeframe as the text messages referenced above, Lorenz drove his Kia Optima to Mayra Carreno and Mario Ortiz's residence on Paris Avenue and parked outside. Lorenz walked into the residence empty handed. Approximately fifteen minutes later, Lorenz left the residence carrying a red/orange and white colored box.

26. Three days later, investigators searched the apartment of Lorenz's girlfriend. When searching a closet, investigators found the orange Nike shoebox that was consistent in size and color with the box that Lorenz carried away from Ortiz's residence. The box contained approximately 1 kilogram of cocaine, and Lorenz admitted the cocaine belonged to him.

## CLAIM I

27. Plaintiff hereby re-alleges paragraphs 1 – 26, as referenced above.

28. The Defendant Currency is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. Chapter 13, Subchapter I.

## CLAIM II

29. Plaintiff hereby re-alleges paragraphs 1 – 26, as referenced above.

30. The Defendant Currency is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes proceeds traceable to an exchange of controlled substances in violation of 21 U.S.C. Chapter 13, Subchapter I.

## CLAIM III

31. Plaintiff hereby re-alleges paragraphs 1 – 26, as referenced above.

32. The Defendant Currency is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money used or intended to be used to facilitate a violation of 21 U.S.C. Chapter 13, Subchapter I.

## CLAIM IV

33. Plaintiff hereby re-alleges paragraphs 1 – 26, as referenced above.

34. The Defendant Currency is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) because it constitutes any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960, or any property traceable to such property.

## REQUESTED RELIEF

Wherefore, the United States requests that the Court issue a warrant for the arrest of the Defendant Currency; that due notice be given to all interested parties to appear and show cause why forfeiture to the United States of America should not be decreed; and that the Defendant Currency be condemned and forfeited to the United States of America and be delivered into the custody of the Drug Enforcement

Administration or the United States Marshals Service for disposition according to law; and for such other relief as this Court may deem just and proper.

Dated: March 14, 2023

MARK A. TOTTEN
United States Attorney

_____
DANIEL T. McGRAW
Assistant United States Attorney
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404

## VERIFICATION

I am a Special Agent of the Drug Enforcement Administration with personal involvement in this investigation.

I have read the contents of the foregoing Verified Complaint for Forfeiture In Rem, and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 03/09/2023

BRIAN SLATE
Special Agent
Drug Enforcement Administration